[Cite as *State v. McKinley*, 2016-Ohio-191.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| WILLIAM D. MCKINLEY | : | Case No. 15 CAA 06 0048 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County
Court of Common Pleas, Case No.
13-CR-I-05-0253

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     January 20, 2016

APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

CAROL HAMILTON O'BRIEN                BRIAN G. JONES
Delaware County Prosecutor            ELIZABETH E. OSORIO
                                       The Law Office of Brian Jones, LLC
By: DOUGLAS DUMOLT                     2211 U.S. Highway 23 North
Assistant Prosecuting Attorney        Delaware, Ohio 43015
140 N. Sandusky Street, 3rd Floor
Delaware, Ohio 43015

*Baldwin, J.*

{¶1} Defendant-appellant William D. McKinley appeals from the May 18, 2015 Judgment Entry of the Delaware County Court of Common Pleas denying his Petition for Post-Conviction Relief. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On May 31, 2013, the Delaware County Grand Jury indicted appellant on one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a felony of the third degree, eight counts of rape in violation of R.C. 2907.02(A)(1)(b), felonies of the first degree, and four counts of kidnapping in violation of R.C. 2905.01(A)(4), felonies of the second degree. The indictment alleged that the victim was under the age of thirteen during each of the incidents. At his arraignment on July 11, 2013, appellant entered a plea of not guilty to the charges.

{¶3} Thereafter, on May 22, 2014, appellant withdrew his former not guilty plea and pleaded guilty, pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160 (1970), to an amended count of gross sexual imposition and an amended count of rape. The remaining counts were dismissed. On the same date, appellant signed a Crim.R. 11(F) agreement and a formal journalized plea of guilty with an acknowledgment of the *Alford* plea.

{¶4} Pursuant to a Judgment Entry filed on July 8, 2014, appellant was sentenced to an indefinite prison term of life with parole eligibility after ten years on the count of rape and to 42 months in prison on the count of gross sexual imposition. The trial court ordered that the sentences be served consecutively.

{¶5} Appellant then filed an appeal, which was assigned Case No. 14 CAA 08 0045. While his appeal was pending, appellant, on March 30, 2015, filed a Petition for Post-Conviction Relief, arguing that he received ineffective assistance of trial counsel. A hearing on appellant's petition was held on May 12, 2015. Pursuant to a Judgment Entry

filed on May 18, 2015, the trial court denied the petition.

{¶6}   Pursuant to an Opinion filed on June 18, 2015 in *State v. McKinley*, 5th Dist. Delaware No. 14 CAA 08 0045, 2015-Ohio- 2436, this Court affirmed the judgment of the trial court in appellant's underlying case.

{¶7}   Appellant now raises the following assignments of error on appeal:

{¶8}   I.   THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN DENYING THE DEFENDANT-APPELLANT'S PETITION FOR POST-CONVICTION RELIEF.

{¶9}   II.   THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN DENYING A BRIEF CONTINUANCE OR SUPPLEMENTAL HEARING TO SECURE THE TESTIMONY OF THE ATTENDING PHYSICIAN; SUBPOENAED BY THE DEFENDANT-APPELLANT IN SUPPORT OF HIS APPLICATION FOR POST-CONVICTION RELIEF.

I

{¶10}   Appellant, in his first assignment of error, argues that the trial court abused its discretion in denying his Petition for Post-Conviction Relief.

{¶11}   An appellate court reviews a trial court's denial of a petition for post-conviction relief under an abuse-of-discretion standard. *State v. Gondor,* 112 Ohio St.3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 58. An abuse of discretion implies more than an error of law; rather it connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶12}   A post-conviction hearing is a civil proceeding governed by the Rules of Civil Procedure. *State v. Nichols*, 11 Ohio St.3d 40, 42-43, 463 N.E.2d 375 (1984). In such a hearing, the petitioner bears the burden of proof. *State v. Aldridge*, 120 Ohio

App.3d 122, 136, 697 N.E.2d 228 (2nd Dist. 1997). However, because post-conviction hearings are civil in nature, the petitioner needs only to prove the claim by a preponderance of the evidence. Id.

{¶13} Appellant's petition was based on allegations of ineffective assistance of trial counsel. A defendant who asserts an ineffective assistance of counsel claim in a petition for post-conviction relief "has the burden of meeting the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668." *State v. Starks,* 9th Dist. Summit No. 25617, 2011–Ohio–2772, ¶ 6. Thus, in order to prevail on a claim of ineffective assistance of counsel, a defendant is required to "show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. Smith,* 89 Ohio St.3d 323, 327, 2000-Ohio-166, 731 N.E.2d 645, citing *Strickland* at 687. In order to establish prejudice, a defendant is required to prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶14} Appellant, in his petition in the trial court, argued, in part, that his trial counsel was ineffective in failing to file a Motion to Suppress. Appellant argued that his statements were coerced through an intense custodial interrogation in violation of *Miranda v Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and that his confession should have been suppressed because the State relied on a non-governmental agent to interrogate him. Appellant now argues that the trial court erred in

finding that any Motion to Suppress that appellant might have been filed would not have been granted and that failure to file such a motion, therefore, did not constitute ineffective assistance of trial counsel.

{¶15} There is no dispute that appellant was not *Mirandized* prior to being

questioned in this case. Appellant maintains that he was in custody and that his statements were taken in violation of *Miranda*.

{¶16} In order for an accused's statement to be admissible at trial, police must have given the accused a *Miranda* warning if there was a custodial interrogation. *Miranda, supra.* If that condition is established, the court can proceed to consider whether there has been an express or implied waiver of *Miranda* rights. *Id.,* at 476.

{¶17} Custodial interrogation has been defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda* at 444. The relevant inquiry is whether a reasonable person under those circumstances would have felt they were under arrest. *State v. Schlupp,* 5th Dist. Coshocton No.2012CA0007, 2012–Ohio–6072.

{¶18} In *Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), the Court offered the following description of the *Miranda* custody test:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to
>
> resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

{¶19} 516 U.S., at 112, 116 S.Ct. 457 (internal quotation marks omitted). A*ccord, Yarborough v. Alvarado,* 541 U.S. 652, 653, 124 S.Ct. 2140, 158 L.Ed.2d 938(2004). The

police and courts must "examine all of the circumstances surrounding the interrogation," *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293(1994), including those that "would have affected how a reasonable person" in the suspect's position "would perceive his or her freedom to leave," *Id.,* at 325, 114 S.Ct. 1526. However, the test involves no consideration of the particular suspect's "actual mindset." *Yarborough,* 541 U.S. 652, 667, 124 S.Ct. 2140, 158 L.Ed.2d 938. *Accord, State v. Mason,* 82 Ohio St .3d 144, 153, 1998–Ohio–370, 694 N.E.2d 932; *State v. Gumm,* 73 Ohio St.3d 413, 429, 1995–Ohio–24, 653 N.E.2d 253(1995).

{¶20} At the hearing on May 12, 2015, Detective Christina Burke of the Delaware County Sheriff's Office testified that her office contacted appellant and asked him to come to the Sheriff's Office to speak with them about the complaint that was filed against him by the victim's mother, Jacquelyn, who is a close friend of appellant. Appellant drove himself there in his own vehicle. Initially, Detective Burke and Detective Gannon were present during the interview, which took place during approximately 4:00 p.m. and 6:00 p.m., but later Jacquelyn came into the room. While Jacquelyn and Detective Burke were in the room with appellant, appellant, who was upset, ultimately confessed. Because they were concerned about appellant's emotional deterioration during the interview, at the conclusion of the interview, appellant was referred to Grady Memorial Hospital. Jacquelyn accompanied appellant there and stayed with him. Appellant then went home.

{¶21} Detective Burke testified that at the beginning of the interview and during the interview, she told appellant that he was free to leave and that when she came into the interview, she told him that he was not in custody. She agreed that she repeated again at approximately 4 minutes into the interview that no matter what he said, appellant was not going to be placed in custody that day. A review of the DVD of the interrogation confirms her testimony and further shows that appellant, who had not yet confessed, was

told that he could leave approximately 50 minutes into the interrogation. Detective Burke also testified that, during the interview, she took a couple of breaks to allow appellant to compose himself and at that at no point did appellant ask or try to leave. When asked by the trial court if she had *Mirandized* appellant on the day of the interview, Detective Burke testified that she did not because appellant was not in custody. According to her, the interview lasted between one and two hours and appellant became emotional, which she attributed to the relationship that he had with Jacquelyn and the information that he had disclosed during the interview.

{¶22} At the hearing, appellant testified that after Jacquelyn left and one of the detectives came back into the room, he asked to have Jacquelyn come back in because he "needed a friend and she was the only one available." Transcript of May 12, 2015 hearing at 118. He admitted that, while in the interrogation room, he was told that he was free to leave and testified that it was not unreasonable for them to ask him to go to the hospital afterwards because it calmed him down, as did Jacquelyn's presence. Appellant was fee to go after a couple of hours and was not taken into custody until after sentencing, which was months after the interrogation. Appellant, when asked, testified that he never got up and tried to leave during the interrogation or told them that he wanted to leave. He further testified that he was never threatened by anyone. The following is an excerpt from this testimony:

{¶23} Q: At no point did [Jacquelyn] threaten you, did she?

{¶24} A: No.

{¶25} Q: In fact, given the allegations, she was being very encouraging of, understanding I guess I should say that you had, what you had done to her daughter?

{¶26} A: Yes, She encouraged me.

{¶27} Q: And she even after you admitted to placing your mouth on her

daughter's vagina, she still went to the hospital with you because she was your friend, correct?

{¶28} A: Yes.

{¶29} Q: And in fact you told them that you'd be more comfortable during the interrogation if she would come back in because you wanted a friend I think as you told your counsel?

{¶30} A: Yes.

{¶31} Transcript of May 12, 2015 hearing at 123-124.

{¶32} Based on the foregoing, we find that the trial court did not err in finding that appellant was not in custody when he confessed and that no *Miranda* violation occurred. We concur with the trial court that a reasonable person in appellant's circumstances would have felt free to leave.

{¶33} Appellant also contends that his confession was not voluntary. Whether a confession is voluntary is an issue independent of whether there was formal compliance with *Miranda. State v. Chase,* 55 Ohio St.2d 237, 378 N.E.2d 1064 (1978). "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards,* 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus, *vacated on other grounds,* 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155 (1978). As noted by the Ohio Supreme Court in *State v. Osie,* 140 Ohio St.3d 131, 2014–Ohio–2966, 16 N.E.3d 588 at paragraph 93:

Nevertheless, "the use of an inherently coercive tactic by police is a prerequisite to a finding of involuntariness."

*State v. Perez,* 124 Ohio St.3d 122, 2009–Ohio–6179, 920 N.E.2d 104, ¶ 71, citing *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Consequently, unless the detectives used a coercive tactic, we need not assess the totality of the circumstances. *State v. Treesh,* 90 Ohio St.3d 460, 472, 739 N.E.2d 749 (2001); *Perez* at ¶ 71. "Evidence of use by the interrogators of an inherently coercive tactic (*e.g.,* physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality of the circumstances analysis." *State v. Clark,* 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988).

{¶34} We concur with the trial court that there is no evidence that appellant was subjected to "the kind of coercion or duress that might have made his inculpatory statements involuntary and therefore excludable." As noted by the trial court, appellant, who had more than four years of college, was never in custody during the approximately two hour interview and was provided with water. Appellant testified that he was never threatened and, while he now contends that the use of Jacquelyn was a "pre-planned, coercive tactic", there is no evidence of coercion on the DVD. No one raised their voices at appellant or threatened him. Moreover, as is stated above, appellant testified that he asked to have Jacquelyn, who had left the room, come back in. We further agree with the trial court that the Detective's suggestion that appellant, who appeared downcast, go to a hospital for an evaluation after the interrogation was evidence of lack of coercion rather than of police misconduct. There is no evidence of coercive police activity.

{¶35} Based on the foregoing, we find that the trial court did not err in finding that any Motion to Suppress that appellant might have filed would not have been granted and

there was no ineffective assistance of trial counsel in failing to file one.

{¶36} Appellant, in his first assignment of error, also argues that the trial court erred in finding that appellant's trial counsel gave him sound advice about the elements of the rape charge at issue. Appellant, in his petition in the trial court, had argued that his trial counsel was ineffective in failing to advise appellant that the State must prove penetration or stimulation of the female sex organ to establish sexual conduct under Ohio law.

{¶37} Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b). Such section prohibits a person from engaging in "sexual conduct" with a person who is less than thirteen years of age. R.C. 2907.01(A) states as follows: "(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other

object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse".

{¶38} However, as stated by this Court in our Opinion in *State v. McKinley*, 5th Dist. Delaware No. 14 CAA 08 0045, 2015 -Ohio- 2436 at paragraph 41: "...as noted by this Court in *State v. Dillon,* 5th Dist. Musk No. 2008–CA–37. 2009 –Ohio-3134 at paragraph 95: "Penetration is not required to commit cunnilingus. Rather, the placing of one's mouth on the female's genitals completes the act of cunnilingus. See *State v. Ramirez* (1994), 98 Ohio App.3d 388, 393, 648 N.E.2d 845; *State v. Bailey* (1992), 78 Ohio App.3d 394, 395, 604 N.E.2d 1366." See also *State v. Lynch*, 98 Ohio St.3d 514, 2003 -Ohio- 2284, 787 N.E.2d 1185 and *State v. Henry*, 9th Dist. Summit No. 27392, 2015-Ohio-5095.

{¶39} Based on the foregoing, we find that the trial court did not err in finding that

appellant's trial counsel did give appellant sound advice about the elements of the rape charge at issue and that trial counsel was not ineffective.

{¶40} Based on our determination that the trial court did not abuse its discretion in denying appellant's petition, appellant's first assignment of error is, therefore, overruled.

II

{¶41} Appellant, in his second assignment of error, argues that the trial court abused its discretion in denying a brief continuance or supplemental hearing to secure the testimony of the attending hospital physician at Grady Memorial Hospital, Dr. Cachapero, who was subpoenaed by appellant in support of his petition.

{¶42} The decision whether to grant or deny a continuance rests in the sound discretion of the trial court. *State v. Unger,* 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When determining whether the court's discretion to grant a continuance has been abused, a reviewing court must balance the interests of judicial economy and justice against any potential prejudice to the moving party. *State v. Battle,* 5th Dist. Morgan No. 09AP0001, 2010–Ohio–4327.

{¶43} Prior to the commencement of the hearing, defense counsel indicated to the court that he had subpoenaed Dr. Cachapero and that the physician was present on the date of the hearing, but left. Counsel indicated that they were attempting to secure his return and asked for a continuance "at least until we can get the doctor back in order to examine him as we've subpoenaed him and it becomes a critical issue in the case." Transcript of May 12, 2015 hearing at 7. Counsel noted that one of the issues in this case was appellant's state of mind at the time of his interrogation and that the doctor saw

appellant and evaluated him the same night. Appellant was held four hours at the hospital before being released. The trial court, in response, stated as follows: "Well, why don't we see whether you can contact him while we're having this hearing today and then I'll decide whether or not I want to have a hearing another day, but we can at least make some headway today, I presume proceed with some other witnesses." Transcript of May 12, 2015 hearing at 7. Appellant's counsel agreed. Appellee stipulated to the admissibility of appellant's medical records and the records were admitted. Appellant was discharged the same day.

{¶44} There is no affidavit or other information indicating exactly what Dr. Cachapero would have said about appellant's mental condition on the date of the interrogation. Appellant, as noted by appellee, was free to testify with respect to his

medical treatment or diagnosis while at the hospital. Moreover, we find that any testimony that the doctor could have offered to be irrelevant since the issue before the trial court was whether or not appellant's confession was voluntary. The trial court had a copy of the interrogation to review as well as appellant's medical records, which indicated that appellant was depressed.

{¶45} Based on the foregoing, appellant's second assignment of error is overruled.

{¶46} Accordingly, the judgment of the Delaware County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, P.J. and

Delaney, J. concur.