[Cite as *State v. Rucker*, 2020-Ohio-2715.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                                     No. 108359

v.                                       :

ROY RUCKER,                              :

    Defendant-Appellant.          :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 30, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-627389-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Gregory M. Paul, Assistant Prosecuting
Attorney, *for appellee.*

P. Andrew Baker, *for appellant.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Roy Rucker appeals his convictions, rendered after a bench trial, for three counts of rape (oral rape, rape by force, and rape of a substantially impaired victim), one count of kidnapping, and one count of importuning. The trial court imposed a five-year aggregate term of imprisonment. We affirm.

{¶ 2} Rucker's significant other, Tiffany, regularly watched the victim, who was 14 years old at the time of the crimes. In August 2017, the victim's mother was out of town and the victim was at Tiffany's house for the evening. Rucker came over and, outside the presence of Tiffany, began acting inappropriately with the victim. Rucker began by touching the victim's leg while the victim was braiding Rucker's hair.

{¶ 3} The victim then went to a bedroom to finish her homework. Rucker walked by the room multiple times before entering and talking with the victim in a sexually explicit manner. The victim secretly recorded Rucker's conversation and was demonstrably uncomfortable with Rucker's sexual overtures. The victim repeatedly rejected Rucker's advances, and he temporarily left the room. Upon returning five minutes later, Rucker pulled down the victim's pants despite her protestations. According to the victim's trial testimony, Rucker's head was by the victim's vaginal area for a couple of minutes. In addition, the victim can be heard on the audio recording telling Rucker that "this doesn't feel good" and pleading with him to stop. The victim clarified that her comments heard on the recording were made while Rucker's head was "by" her vaginal area. The victim then pushed Rucker off, telling him "you don't need to touch me" and "could you please get off of me." Rucker left the room.

{¶ 4} After the first encounter, the victim was given Benadryl and she fell asleep. The victim awoke to Rucker vaginally raping her, which he continued to do

after the victim woke up and while she tried to push him away. After a couple of minutes, Rucker got off of the victim and left the room.

{¶ 5} Rucker was convicted following the bench trial of two counts of forcible rape in violation of R.C. 2907.02(A)(2) (oral and vaginal rape), one count of rape in violation of R.C. 2907.02(A)(1)(c) (substantial impairment rape), one count of importuning in violation of R.C. 2907.07(B)(1), and one count of kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification in violation of R.C. 2941.147(A). The trial court sentenced Rucker to a five-year aggregate term of imprisonment, with all counts to be served concurrently. The trial court discussed merging the convictions as being allied offenses at the sentencing hearing. The state offered its explanation in support of an argument that the offenses were not allied. Rucker did not object or disagree with the state's position, and the trial court imposed separate sentences to be concurrently served.

{¶ 6} In the first and third assignments of error, Rucker claims that his convictions were against the weight of the evidence or based upon insufficient evidence.

{¶ 7} A claim that a jury verdict is against the weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. Rucker has not presented separate arguments in support of the claim that the conviction was entered against the weight of the evidence — i.e., Rucker does not claim or offer any argument as to the credibility of the state's evidence. His

sole argument is that the state failed to present any evidence substantiating the allegations. As a result, we will solely address Rucker's arguments under the sufficiency-of-the-evidence standard as the issue is presented. App.R. 16(A)(7); *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 2.

{¶ 8} A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 9} Rucker first claims that there is no direct evidence of oral rape because the victim testified that Rucker "tried" to perform cunnilingus and Rucker's mouth was merely "by" the victim's vaginal area. According to Rucker, there must be evidence of penetration in order to demonstrate cunnilingus under R.C. 2907.02(A)(2). Rucker is mistaken.

{¶ 10} Under Ohio law, penetration is not required to demonstrate cunnilingus. *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 86. "[T]he act of cunnilingus is completed by the placing of one's mouth on the female's genitals." *Id.*, citing *State v. Ramirez*, 98 Ohio App.3d 388, 393, 648 N.E.2d 845 (3d Dist.1994), and *State v. Bailey*, 78 Ohio App.3d 394, 395, 604 N.E.2d 1366 (1st Dist.1992). In this case, the victim described Rucker's conduct of

removing her pants and having his mouth "by" her vaginal area for a couple of minutes and, additionally, the portion of the audio recording in which the victim is heard telling Rucker that "this doesn't feel good" was at the time that Rucker's mouth was "by" her vaginal area. The victim's recorded statement provides a reasonable inference of contact. This is sufficient evidence of guilt under R.C. 2907.02(A)(2) when considering all reasonable inferences in favor of the state's case. *See, e.g.*, *State v. McCall*, 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, ¶ 9 (testimony that the victim felt something touching her vagina and that the defendant removed the victim's pants and his head was "down there" was sufficient evidence of oral rape having occurred).

{¶ 11} We also can summarily dispel Rucker's remaining arguments that there was no evidence of force or restraint for the rape and kidnapping counts, or that we should adopt a novel proposition of law that "sleep" does not constitute a "substantial impairment" under R.C. 2907.02(A)(1)(c). *See State v. Jones*, 8th Dist. Cuyahoga No. 98151, 2012-Ohio-5737, ¶ 30 (sleep constitutes a mental or physical condition that impairs a person from resisting or consenting). The record amply demonstrates that the oral and vaginal rapes were committed with force — the victim described her inability to physically prevent Rucker from forcing the sexual conduct based on their respective size and strength disparities and her repeated statements telling Rucker to stop or that she did not want to engage in any sexual activity with Rucker. "'Force' is defined in R.C. 2901.01(A)(1) as 'any violence, compulsion, or constraint physically exerted by any means upon or against a person

or thing.'" *Id.* at ¶ 27. The "force" element of R.C. 2907.02(A)(2) is demonstrated through evidence that the force or threat of force was sufficient to overcome the victim's will. *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988). The victim's testimony satisfies the force element — the state presented evidence that the victim's will, of not engaging in sexual activity with Rucker, was overcome by physical compulsion or restraint. In addition, there was evidence that the victim felt restrained by Rucker before any of the rapes occurred for the purposes of the kidnapping conviction.

{¶ 12} And finally with respect to the sufficiency issue, Rucker's argument regarding substantial impairment under R.C. 2907.02(A)(1)(c) is contrary to the weight of authority. *See, e.g., State v. Hartman*, 8th Dist. Cuyahoga No. 105159, 2018-Ohio-2641, citing *State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358; *State v. Graves*, 8th Dist. Cuyahoga No. 88845, 2007-Ohio-5430. Rucker has not presented any argument supporting a request to deviate from the weight of authority concluding that "sleep" can constitute a substantial impairment under R.C. 2907.02(A)(1)(c). And regardless, there is evidence in the record that the victim was given Benadryl that caused her to fall asleep and lose total control of her faculties at the time that Rucker initially began raping the victim. Rucker has not addressed this aspect of the trial evidence in this appeal. App.R. 16(A)(7). The first and third assignments of error are overruled.

{¶ 13} In the final assignment of error, Rucker claims that his convictions for forcible rape and for substantial impairment rape should have merged because

there was only "one victim, one act, and one actual harm imposed on the victim" by Rucker's conduct.[1] Rucker did not object or even respond to the trial court's inquiry into the merger issue at the sentencing hearing, and therefore, Rucker has forfeited all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Forfeited error "is not reversible error unless it affected the outcome of the proceeding." *Id.* And even if an offender demonstrates that the trial court committed plain error that affected the proceeding, "an appellate court is not

---

[1] Rucker's entire discussion of the second assigned error is as follows:

In this case, Counts One and Two were effectively alternate theories. Defendant-Appellant allegedly had vaginal intercourse with the alleged victim; he allegedly did so without her consent and while using force; he also allegedly did so while she was asleep. But there was only one act and one state of mind. This case is on point with *State v. Trotter*, 2012-Ohio-2760, Cuyahoga County Court of Appeals, June 21, 2012, in which the defendant allegedly raped (using force) a victim who was asleep, and was charged and convicted of both theories of rape that were charged in the instant case. This Court determined that the charges should have merged. Although this case was decided before *State v. Ruff*, 143 Ohio St.3d 114, 34 N.E.2d 892, 2015-Ohio-995, was decided by the Ohio Supreme Court, *Ruff* would not result in a different analysis as there was only one victim, one act, and one actual harm imposed on the victim.

While it is the position of Defendant-Appellant that the failure to merge the two counts in question was plain error, it should be noted that defense counsel did not dispute the prosecutor when the prosecutor argued that none of the charges, with the exception of the kidnapping charge, should be merged. Tr. 168. In the alternative to plain error, it is argued that defense counsel was ineffective for failing to request merger on Counts One and Two. Under the standard set forth in *Strickland v. Washington*, 466 U.S. 688, it was deficient not to present a viable argument for merger and the failure to do so was prejudicial.

required to correct it." *Id.* at ¶ 23. Plain error is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240.

{¶ 14} Under R.C. 2941.25, courts must use a three-part inquiry to determine whether a defendant can be convicted of multiple offenses if those offenses arose from the same act or transaction:

> (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. The test is stated in the disjunctive form: the existence of any one prong suffices for the imposition of separate sentences. *State v. Esner*, 8th Dist. Cuyahoga No. 104594, 2017-Ohio-1365, ¶ 6. Further, "[t]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B)" if the harm that results from each offense is separate and identifiable. *Id.* at ¶ 23. When reviewing to determine whether offenses are of similar import in cases involving a single victim, we must review the statutory language and intent. *See, e.g., State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 15 (reviewing the separate intent behind criminalizing aggravated vehicular assault and felony operation of a vehicle while intoxicated). The conduct analysis is but one prong of the disjunctive standard.

**{¶ 15}** Rucker has not addressed this aspect of the *Ruff* analysis. App.R. 16(A)(7). In this case, it is at least debatable whether the substantial impairment rape is of similar import to the forcible rape based on the statutory language and intent, and whether Rucker committed both rapes with the same conduct.

**{¶ 16}** Nevertheless, according to Rucker, he committed the substantial impairment rape and the forcible rape with the same conduct, and therefore, the trial court committed plain error by failing to merge the two offenses before sentencing. Rucker's argument entirely rests on the unsubstantiated presumption that the same conduct constituted both the forcible and substantial impairment rapes. Although Rucker arguably committed both of the rapes through one continuous act, with no break in the chain of events, his conduct was necessarily different in the commission of both rapes — to commit forcible rape the offender must overcome the victim's will, and in order to commit substantial impairment rape, the offender must be aware of the impairment that prevents resistance. To some, this may be a distinction without a difference, but the Ohio legislature has chosen to separate this very scenario into separate and distinct crimes.

**{¶ 17}** Forcible rape under R.C. 2907.02(A)(2) and substantial impairment rape under R.C. 2907.02(A)(1)(c) do not share the "same identity." *In re C.A.*, 8th Dist. Cuyahoga No. 93525, 2010-Ohio-3508, ¶ 15. The crimes have different elements, and therefore, the conduct required to prove each crime is distinct. *See id.* In order to demonstrate substantial impairment, the state must prove that the victim's ability to "resist or consent" is substantially impaired because of a mental

or physical condition. The "force" element of R.C. 2907.02(A)(2), on the other hand, is demonstrated if the state demonstrates that the force or threat of force was sufficient to overcome the victim's will. *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 50, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988). The two crimes cannot concurrently occur. *See, e.g., State v. Quinones*, 8th Dist. Cuyahoga No. 94082, 2010-Ohio-5240, ¶ 30 (noting the state's concession that the forcible rape in that particular case could not apply because the victim was unconscious at the time of the rape).

{¶ 18} In this respect, Rucker's observation that the two crimes are "in the alternative" is true, but only in the vacuous sense. An offender cannot forcibly rape a substantially impaired victim under R.C. 2907.02. If the victim is unable to resist or consent because of an impairment, force cannot be demonstrated, and if the victim is capable of resisting or her will is overcome by force, the victim cannot be deemed to be substantially impaired. *Quinones.* The two separate crimes are committed with different conduct although that conduct may very well arise out of one act as the criminal episode unfolds.

{¶ 19} Rucker's conduct in raping the victim while she was substantially impaired, at the least for the purposes of our plain error review, differed from his conduct in forcibly raping the victim after the impairment was removed. The testimony demonstrated that the victim was awoken by Rucker's conduct in raping her while she was in the Benedryl-induced state of unconsciousness. After she regained her senses, the victim tried to prevent Rucker from further raping her, but

she testified that she felt restrained as Rucker overcame her will through his size and strength — although eventually the victim was able to push Rucker away. By the victim's testimony, the forcible aspect of the rape arguably continued for a few minutes after the victim regained consciousness (otherwise she would be unable to conclude how long the rape occurred) and began physically resisting Rucker. Tr. 40:18-23 ("Q: How long was the defendant on top of you? A: Once I -- like -- I don't know. It felt like hours. I don't know, because -- once I realized that he was -- like, I actually woke up and came to, I pushed him. And then I realized my pants weren't on me and there was blood down there."); tr. 41:14-17 ("Q: How long after you realized that he was on top of you? A: Well, I was sleep, so I think -- I think, like, in reality it might have been like a minute or two —"). These facts arguably demonstrate separate conduct, the rape of victim who is substantially impaired and is therefore unable to resist, and the rape of a victim whose will was overcome by force.

{¶ 20} It is important to understand the distinction where the force element of the crime could only come into fruition after the victim regained her ability to resist from the impaired state. On this point, this case presents unique facts for review — although substantial impairment rape is typically charged in the alternative to a forcible rape, in this case the state was able to demonstrate both crimes.

{¶ 21} The dissent poignantly refers to Rucker's action as one continuous act; however, Rucker's actions are best described as one act in which the conduct shifts to constitute the commission of a second crime following the commission of

the first. Because Rucker's continuous act morphed throughout the attack, the additional element of force transformed the original act of substantial impairment rape into a second crime — overcoming the victim's ability to resist through force or the threat of force. This is no different than situations in which drug traffickers or possessors receive multiple convictions for having concurrent possession of various narcotics. *See, e.g., State v. Warren*, 5th Dist. Fairfield No. 18-CA-42, 2019-Ohio-2927, ¶ 76 (collecting cases), or an offender commits a crime while inside an occupied structure for the purposes of burglary and the secondary crime. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 120 (burglary and the robbery committed within the structure are separate crimes because the burglary was committed upon entering the structure and the robbery that followed was separate conduct that constituted the commission of a second, distinct offense).

{¶ 22} R.C. 2941.25 provides that a defendant may be convicted of only one offense "where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import." In this context, Rucker arguably did not commit the substantial impairment rape with the same conduct that substantiated the forcible rape, even though the two crimes were temporally related. Thus, under the statutory parlance, the same conduct did not constitute the commission of two or more allied offenses. *See, e.g., State v. J.M.*, 10th Dist. Franklin No. 14AP-621, 2015-Ohio-5574, ¶ 51 (anal penetration and vaginal penetration were different acts and therefore the court erred by merging the convictions); *State v. Williams*, 1st Dist. Hamilton No. C-140199, 2015-Ohio-3968,

¶ 59.  The conduct that constituted the forcible rape could not by the statutory definition, constitute the substantial impairment rape.

{¶ 23} In essence, Rucker is arguing that the substantial impairment and forcible rapes that he committed were part of a single "course of conduct" or the "same act or transaction" and, therefore, the offenses should merge under R.C. 2941.25.  The allied-offense statute focuses on the offender's conduct, and omits the "same course of conduct" or the "same act or transaction" language used in other sections of the Revised Code.  *See, e.g.,* R.C. 2929.14(B)(1)(d) (the court shall not impose more than one prison term for certain specifications for "felonies committed as part of the same act or transaction"); R.C. 2929.14(C)(4) (consecutive-sentence findings include whether multiple offenses were committed "as part of one or more courses of conduct").

{¶ 24} Under *Ruff,* the Ohio Supreme Court concluded that within the meaning of R.C. 2941.25, "courts must evaluate three separate factors — the *conduct,* the animus, and the import."  (Emphasis added.)  *Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at paragraph one of the syllabus.  Further,

> Under R.C. 2941.25(B), a defendant whose *conduct supports multiple offenses* may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

(Emphasis added.)  *Id.* at paragraph three of syllabus.  Thus, the focus of allied offense inquiries is on the offender's conduct that constitutes the commission of the offense, not upon the temporally related course of conduct or same acts or

transactions analysis or the act being considered as one continuous act. We cannot read the latter propositions into R.C. 2941.25 or *Ruff*. That would be an issue best reserved for the legislature, or at the very least, the Ohio Supreme Court in review of its own decision in *Ruff*.

{¶ 25} It is for the above reasons that Rucker's reliance on *State v. Trotter*, 8th Dist. Cuyahoga No. 97064, 2012-Ohio-2760, ¶ 46, for the presumption that a substantial impairment rape and a forcible rape can be committed with the same conduct is misplaced. In *Trotter*, it was concluded that an offender "could forcibly rape a substantially impaired victim" and therefore, forcible and substantial impairment rapes are allied offenses. *Id.* at ¶ 46; *see also State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 19; *but see State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 48 (criticizing the conclusion that a forcible rape of a sleeping victim can be proven by evidence of clothing being removed). This is at best, an imprecise statement of law, based on the foregoing discussion, but is one that has nonetheless persisted in this district.

{¶ 26} Nevertheless, *Trotter* was decided before *Ruff* relegated the same-conduct test to being but one avenue to demonstrate the allied nature of two offenses. Because conduct is no longer the sole dispositive issue in reviewing merger as it was considered to be under *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48-50, *Trotter* is no longer binding on our merger analysis. We must also consider whether the offenses are dissimilar in import or significance or whether the offenses were committed with separate animus or motivation. *Ruff,*

143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 31. "An affirmative answer to any of the above will permit separate convictions." *Id.* The conclusion reached in *Trotter* based solely on the same-conduct discussion as it pertains to allied offenses is no longer dispositive, and thus, Rucker's reliance on *Trotter* is misplaced. Rucker has not addressed this aspect of the merger analysis, and therefore, we decline to render any conclusions thereon. App.R. 16(A)(7).

{¶ 27} In short, we decline to find plain error in the failure to merge the substantial impairment rape and the forcible rape offenses for sentencing in this particular case, and even if we were inclined to find error, we would decline to invoke the plain-error doctrine in light of limited arguments presented. *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23. Because Rucker's argument is limited to the presumption that he committed the rapes with the same conduct, we decline to conclude that the trial court plainly erred by failing to merge the convictions. *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22-23. (Crim.R. 52(B) provides appellate courts with discretion to correct plain errors; however, even if plain error has been demonstrated, the appellate court is not required to correct it). Rucker has not addressed any other aspect of the disjunctive *Ruff* analysis, and thus, we must constrain our discussion to the arguments advanced. App.R. 16(A)(7). Unless and until the Supreme Court wishes to revisit *Ruff* or *Rogers*, we will apply these cases as written.

{¶ 28} In light of the fact that we cannot conclude that the trial court erred in failing to merge the substantial impairment rape with the forcible vaginal rape,

Rucker's final argument — ineffective assistance of counsel based on the alleged failure to object to individual sentences on the alleged allied offenses — is also without merit. "Reversal of a conviction for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and second, that the deficient performance prejudiced the defendant so as to deprive the defendant of a fair trial." *State v. Ford*, 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 391, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, even if the error is obvious, it must have affected substantial rights, and the Ohio Supreme Court has "'interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.'" *Rogers* at ¶ 22, quoting *Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Along these lines, a defendant is "required to demonstrate a reasonable *probability* that the error resulted in prejudice — the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.*, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

{¶ 29} In other words, in the context of the current appeal, in order to demonstrate ineffective assistance of counsel, Rucker must demonstrate the reasonable probability that the error — trial counsel's failure to object to the sentences as being imposed on allied offenses — resulted in prejudice to Rucker based on the facts and circumstances of his case. *State v. Davis*, Slip Opinion No. 2020-Ohio-309, ¶ 1. In light of the limited argument presented in favor of

demonstrating that the separate rape convictions were for allied offenses of similar import, we are unable to conclude that Rucker's counsel rendered ineffective assistance in failing to object to the sentences imposed and that the outcome of the proceedings would have been different. The final assignment of error is overruled.

{¶ 30} We affirm the convictions.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS WITH SEPARATE CONCURRING OPINION;
LARRY A. JONES, SR., J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

FRANK D. CELEBREZZE, JR., J., CONCURRING:

{¶ 31} I concur with the majority's opinion and resolution of this case. I write separately to express my view that *Trotter* is inapplicable and distinguishable from the case at bar.

{¶ 32} I acknowledge this court's holding in *Trotter*, that forcible and substantial impairment rape can be committed by the same conduct. *Trotter* was decided based upon an application of the merger test set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, rather than the subsequently established three-part test in *Ruff*. The *Johnson* test was rendered "largely obsolete" by the *Ruff* test. *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11. Additionally, in *Trotter*, the defendant-appellant properly preserved the merger issue for appellate review. Here, Rucker did not properly preserve the issue, and forfeited all but plain error.

{¶ 33} For all of these reasons, I would find the *Trotter* holding to be outdated and inapplicable in this case.

LARRY A. JONES, SR., J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 34} Respectfully, I concur in part and dissent in part. I concur with the majority's decision to affirm the rape with force, the substantial impairment rape, importuning, and kidnapping charges. I dissent from the majority's decision to affirm the oral rape charge; I would find the evidence insufficient to support it. I also dissent from the majority's decision finding that the forcible rape and substantial impairment rape convictions were not subject to merger.

{¶ 35} In regard to the oral rape conviction, I agree, as the majority states, that the act is completed by an offender putting his or her mouth on the victim's genitals and that no penetration is required. I disagree that there was any evidence that this occurred here, however.

{¶ 36} The victim's testimony relative to the oral rape charge was that Rucker "pulled [her] pants down and *tried* to perform oral sex." (Emphasis added.) Tr. 35. When asked what she meant by "tried," the victim explained, "he was down there maybe a second or two because I pushed him but he was, like, a grown man and my strength * * *." *Id.* She further testified that by "down there" she meant that Rucker's mouth was by her "vagina area." *Id.* However, the victim never testified that Rucker was successful in putting his mouth on her vagina. The majority cites this court's decision in *State v. McCall*, 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, in support of its decision finding the evidence sufficient. *McCall* is distinguishable.

{¶ 37} It is true that the victim in *McCall* described the defendant's head as being "down there," meaning her vaginal area, but she also specifically testified that the defendant "put his mouth on her vagina." *Id.* at ¶ 7-8. I do not find the majority's reasoning that the victim's recorded statement that "this doesn't feel good" creates "a reasonable inference of contact" in light of the victim's testimony specifically stating that Rucker only "tried" to orally rape her. Accordingly, I would find the evidence insufficient on the oral rape conviction and I would vacate it.

{¶ 38} In regard to the merger issue, I believe that on this record, the rape with force and substantial impairment rape should have merged. I would find that a fair and accurate reading of the victim's testimony leads to the conclusion that the rapes were committed by one act. I disagree with the majority's finding that the victim testified that the "forcible aspect of the rape continued for a few minutes after

the victim regained consciousness and began attempting to physically resist Rucker." Her testimony was "I actually woke up and came to, I pushed him. * * * He was stronger but * * * I was able to push him and he got off of me." Tr. 40, 42.

{¶ 39} I recognize that *State v. Trotter*, 8th Dist. Cuyahoga No. 97064, 2012-Ohio-2760, in which this court held that the defendant's convictions for rape with force and substantial impairment rape should have merged, and on which Rucker relies, did not analyze the issue under the now applicable standard set forth in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. Under *Ruff*,

> when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

{¶ 40} I do not answer "yes" to any of these questions when I consider them as it relates to the evidence here. In my opinion, the rape with force and the substantial impairment rape were committed with the same conduct and animus and the convictions for the two should have merged for the purpose of sentencing.

{¶ 41} I disagree with the majority's assertion that this case "is no different than situations in which drug traffickers or possessor receive multiple convictions for having concurrent possession of various narcotics," or an offender who "commits a crime while inside an occupied structure for the purposes of burglary and the secondary crime." I believe there is a difference.

{¶ 42} In regard to the drug convictions, in a recent case from this district, this court found that convictions for trafficking in heroin, trafficking in fentanyl, and trafficking in cocaine, were not allied offenses subject to merger. *State v. Daniels*, 8th Dist. Cuyahoga No. 108299, 2020-Ohio-1496. In *Daniels*, the police seized 27 grams of a mixture of heroin and fentanyl along with 50 grams of cocaine from the defendant's house. The *Daniels* court was not persuaded by the defendant's contention that the trafficking in cocaine should merge with the other trafficking counts, nor his contention that the trafficking in heroin and fentanyl counts should merge.

{¶ 43} In regard to the trafficking in cocaine merging with the other two trafficking convictions, this court noted that the cocaine was packaged separately from the heroin and fentanyl and, therefore, constituted separate crimes. In regard to the mixture of the heroin and fentanyl, this court found that there was not a single, identifiable harm. Specifically, this court noted the specific harms that each of the drugs wreaks on users ("Thus, while heroin is deadly, fentanyl has shown to be far more deadly. We conclude that trafficking in heroin and trafficking in fentanyl pose separate and identifiable harms under *Ruff* and do not merge as allied offenses."). *Id.* at ¶ 36.

{¶ 44} In regard to burglary and robbery being separate and distinct offenses, I agree. The case that the majority cites, *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, provides a clear-cut example of separate and distinct crimes not subject to merger. In *Ketterer*, the 53-year-old defendant went

to the home of the victim, an 85-year-old man, to ask him if he could borrow $200. The victim told the defendant he did not have the money and asked the defendant to leave. The defendant felt the victim was "being very disrespectful" so the defendant hit the victim in the head with a skillet three times. *Id.* at ¶ 2. Thinking that the victim would be able to identify him, the defendant stabbed the victim to death. The defendant then stole money from the victim's wallet, from around the house, and drove away in the victim's car.

{¶ 45} The defendant was charged with and convicted of aggravated robbery and aggravated burglary, among other crimes. He contended that the robbery and burglary should merge as allied offenses. The Ohio Supreme Court rejected his contention, noting that the act of entering or staying in the victim's home after the victim asked him to leave was separate from the act of later robbing the victim. *See id.* at ¶ 119-120.

{¶ 46} I believe the situations presented in *Daniels* and *Ketterer* are distinguishable from the situation presented in this case. I agree with the majority that the crimes in those cases are separate and distinct. Here, however, with regard to the rape with force and substantial impairment rape, I believe there was one sexual assault, the offenses did not create a separate, identifiable harm, they were not committed separately, and they were not committed with a separate animus or motivation.

{¶ 47} In light of the above, I concur in part and dissent in part with the majority's opinion. I would affirm the convictions with the exception of the oral

rape, and I would remand for resentencing with merger of the rape with force and substantial impairment convictions.